UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

CECIL M.,[1]

        Plaintiff,

   v.                                  21-CV-00133-LJV
                                                  DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

―――――――――――――――――――――――――――

On January 25, 2021, the plaintiff, Cecil M. ("Cecil"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2]  *Id.* On December 20, 2021, Cecil moved for judgment on the pleadings, Docket Item 8; on May 19, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on June 30, 2022, Cecil replied, Docket Item 10.

―――――――――――――――

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Cecil applied for Disability Insurance Benefits ("DIB").  One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  A qualified individual may receive both DIB and Supplemental Security Income ("SSI"), and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Cecil's motion and grants the Commissioner's cross-motion.[3]

## <u>STANDARD OF REVIEW</u>

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

I.      **THE ALJ'S DECISION**

On April 29, 2020, the ALJ found that Cecil had not been under a disability between March 24, 2015, and December 31, 2018.  *See* Docket Item 6 at 26-42.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 404.1520(a).  *See id.*

At step one, the ALJ found that Cecil met the insured status requirements of the Act through December 31, 2018, and had not engaged in substantial gainful activity since his alleged disability onset date of March 24, 2015.  *Id.* at 28.  At step two, the ALJ found that Cecil suffered from several severe, medically determinable impairments: "degenerative disc disease of the cervical and lumbar spine, status-post lumbar fusion surgery"; "sprain of the thoracic spine"; "bursitis of the right hip"; "tendinopathy of the left shoulder"; "post-traumatic stress disorder ('PTSD')"; and "major depressive disorder." *Id.* at 28-29.

At step three, the ALJ found that Cecil's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 29-31.  More specifically, the ALJ found

3

that Cecil's physical impairments did not meet or medically equal listing 1.02 (major dysfunction of a joint) or listing 1.04 (disorders of the spine), *id.* at 29, and that Cecil's mental impairments did not meet or medically equal listing 12.04 (depressive, bipolar, or related disorders) or listing 12.15 (trauma and stressor-related disorders), *id.* at 29-30. In assessing Cecil's mental impairments, the ALJ found that Cecil was moderately impaired in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself.  *Id.* at 29-30.

The ALJ then found that Cecil had the RFC[4] to perform "sedentary work" as defined in 20 C.F.R. § 404.1567(a) except that:

> [Cecil] can never climb ramps and stairs, and never climb ladders, ropes, or scaffolds.   [He can]   never   balance[,] . . . [can] stoop occasionally, but [can] never kneel, never crouch, and never crawl. [He] is limited to simple, routine, and repetitive tasks, and [making] simple   work-related   decisions.   [He   can]   endure   occasional interaction with supervisors, co-workers[,] and the public.

*Id.* at 31-39.

At step four, the ALJ found that Cecil could no longer perform any past relevant work.  *Id.* at 40.  But given Cecil's age, education, and RFC, the ALJ found at step five that Cecil could perform substantial gainful activity as a document preparer[5] or a cutter

---

[4] A claimant's residual functional capacity ("RFC") is the most he "can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

[5] This Court is aware of the Second Circuit's recent summary order in *Gibbons v. Commissioner of Soc. Sec.*, 2023 WL 3830774 (2d Cir. Jun. 6, 2023), finding that an ALJ must probe into the apparent conflict between an RFC limitation for simple, routine tasks and a job that requires a reasoning level of three, *see id.* at *2-3.  Although not argued as a point of error by Cecil, the ALJ did not probe into the conflict between

and paster.  *Id.* at 41; *see Dictionary of Occupational Titles* 249.587-018, 1991 WL

672349 (Jan. 1, 2016); *id.* at 249.587-014, 1991 WL 672348.  Therefore, the ALJ found

that Cecil had not been under a disability or entitled to DIB between March 24, 2015,

and December 31, 2018.  *See* Docket Item 6 at 40-42.

## II.   ALLEGATIONS

Cecil argues that the ALJ erred in two ways.  *See* Docket Item 8-1 at 18-29.

First, he argues that the ALJ erred by relying on "his own lay interpretation of the raw

medical evidence to make the mental RFC."  *Id.* at 18.  Second, he argues that the ALJ

erred by cherry-picking evidence in the record to support an RFC for a reduced range of

sedentary work.  *Id.* at 24.  For the reasons that follow, this Court disagrees.

## III.   ANALYSIS

### A.  Cecil's Mental RFC

An ALJ must "weigh all of the evidence available to make an RFC finding that [is]

consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir.

---

Cecil's limitation to simple, routine, and repetitive tasks and his ability to work as a
document preparer, a job requiring a reasoning level of three.  *See* Docket Item 6 at 78-
79.  Nevertheless, this Court finds that error to be harmless, as the position of cutter
and paster requires a reasoning level of only two, which is not inconsistent with Cecil's
limitation to simple, routine, and repetitive tasks.  *Cf. Sanchez v. Berryhill*, 336 F. Supp.
3d 174, 178-79 (W.D.N.Y. 2018) ("Assuming *arguendo* that the ALJ erred in failing to
explicitly incorporate moderate limitations with respect to complex tasks and decision-
making into his RFC finding, and/or erred by failing to limit plaintiff to unskilled work,
such error is harmless.  The four jobs identified by the vocational expert are all unskilled
positions, which can be performed by individuals with moderate mental deficiencies.");
*Akey v. Astrue*, 467 F. App'x 15, 17 (2d Cir. 2012) ("The ALJ's failure to include the
limitation to unskilled and semi-skilled work is harmless because the only jobs the
vocational expert identified were unskilled or semi-skilled.  As such, the ALJ did not err
by relying on the vocational expert's testimony as evidence that [plaintiff] could perform
work existing in significant numbers in the national economy.").

2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019).  As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. § 404.1545; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Cecil argues that the ALJ erroneously "relied on his own lay interpretation of the raw medical evidence to make the mental RFC."  *See* Docket Item 8-1 at 18.  And he says that "to the extent the ALJ did rely on opinion evidence" in assessing Cecil's mental RFC, the ALJ erred by relying on the opinion of the non-examining state agency review consultant, E. Gagan, Psy.D.  *Id*.  But Cecil is incorrect on both counts.

First, Cecil seems to suggest that because the ALJ found Dr. Gagan's opinion to be somewhat persuasive but also found Cecil to be more restricted than Dr. Gagan opined, the ALJ erred.  *See id*. at 19-20.  Indeed, Cecil faults the ALJ for limiting Cecil to simple tasks and only occasional interaction with others when "Dr. Gagan found [any] impairments to be non-severe and did not assign any limitations."  *Id.* at 19.  But an ALJ does not err to a claimant's disadvantage when the ALJ gives the claimant the benefit of the doubt and formulates an RFC with *more* limitations than the opinion evidence suggests.  So Cecil's argument is not only misplaced, it is also nonsensical.

6

Here, Dr. Gagan opined that Cecil was only mildly impaired in the four areas of mental work-related functioning, Docket Item 6 at 88*;* so in Dr. Gagan's mind, Cecil did not suffer from any severe, medically determinable mental impairments.  *See* 20 C.F.R. § 404.1520a(d)(1).  But the ALJ determined that Cecil suffered from severe PTSD and depression and was moderately impaired in the four areas of mental work-related functioning.  *See* Docket Item 6 at 28, 30.  The ALJ therefore crafted an RFC with more limitations than Dr. Gagan's opinion required.  That was not an error requiring remand. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted . . . and assessed a more generous limitation of 5% off-task time.  The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.").

In fact, Cecil's argument—that a court should remand when an ALJ finds a claimant to be *more* restricted than the medical providers opined—makes no sense and would turn the Social Security review process on its head.  *See, e.g., Danielle S. v. Comm'r of Soc. Sec.*, 516 F. Supp. 3d 286, 291 (W.D.N.Y. 2021) ("As to the ALJ's assessment of a stress limitation more restrictive than that identified by Dr. Santarpia, this is not a basis for remand."); *Orlando A. v. Comm'r of Soc. Sec.*, 2023 WL 5344934, at *4 (W.D.N.Y. Aug. 21, 2023) ("Moreover, even if the ALJ erred with respect to Dr. Siddiqui's opinion, Plaintiff fails to demonstrate prejudice warranting remand. . . . The ALJ's assessment of physical limitations more restrictive than Dr. Siddiqui identified is not a basis for remand . . . .").  Taken to its logical conclusion, Cecil's argument

suggests that if the ALJ agreed entirely with Dr. Gagan, found no severe mental impairments, and crafted a less restrictive RFC, the ALJ would not have erred.  On remand, then, the ALJ could simply do just that.  And that, of course, means remanding makes no sense.

Cecil also suggests that an ALJ cannot rely on the opinion of a consultant who reviews the medical records in the absence of an opinion from an examining or treating medical provider.  *See id.* Docket Item 8-1 at 21 ("As noted above, the only mental opinion in the record, the was [*sic*] Dr. Gagan, which [*sic*] found non-severe impairments and no limitations. . . . While the ALJ found this somewhat persuasive, he did not riley [*sic*] on it for the RFC, as his RFC gave mental limitations and was inconsistent with this opinion.").  But that is incorrect as well.

Contrary to Cecil's argument, an ALJ must consider prior administrative findings, such as Dr. Gagan's opinion, because "State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation[s]." 20 C.F.R. § 404.1513a(b)(1).  Indeed, there is no rule prohibiting an ALJ from favoring a prior administrative finding over the opinions of treating or examining sources, *see* 20 C.F.R. § 404.1513c(a), and even under the old regulations, "the opinions of nonexamining sources [may] override treating sources' opinions, provided they are supported by evidence in the record," *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).  *See Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 10 (W.D.N.Y. 2022) ("Other than her blanket statement that an ALJ should always credit the opinion of an examining physician over the opinion of a non-examining physician—which, as explained above, is not required in all circumstances—Plaintiff offers no meaningful

argument as to why the ALJ erred in crediting the opinion offered by [a psychological consultant] over that offered by [a consultative examiner].  Accordingly, Plaintiff is not entitled to remand on this basis.").

Moreover, and again contrary to Cecil's suggestion, an ALJ is not obligated to seek an opinion from a consultative examiner or a treating physician simply because the ALJ concludes that the claimant suffers from one or more severe mental impairments and there is no medical opinion to that effect.  Cecil is correct that when there are gaps in the record, the ALJ must develop the record, *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); and he is correct that this duty is heightened where "a claimant properly waives his right to counsel and proceeds *pro se*," *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009).  *See* Docket Item 8-1 at 21-22.  But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1983) (internal quotation marks and citation omitted); *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (holding that an ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." (internal quotation marks and citation omitted)).

Here, there were no gaps.  The ALJ had access to Cecil's mental health treatment records, *see* Docket Item 6 at 1282-1344, as well as Dr. Gagan's opinion, *see id.* at 87-88, and the ALJ used both to assess Cecil's mental RFC.[6]

---

[6] Remanding Cecil's case for the ALJ to obtain a consultative examiner's opinion regarding the severity of Cecil's mental impairments also would serve no purpose: the opinion would evaluate Cecil's mental condition only "at the time of the examination"

What is more, by limiting Cecil to simple, routine, and repetitive tasks; simple work-related decisions; and only occasional interaction with supervisors, co-workers, and the public, *see* Docket Item 6 at 31, the ALJ properly addressed Cecil's moderate impairments in mental work-related functioning, *see, e.g.*, *Zabala v. Astrue*, 595 F.3d 402, 407 (2d Cir. 2010) (affirming ALJ's decision that claimant could perform prior unskilled work where "[n]one of the clinicians who examined [the claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."). *See also McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (finding that moderate limitations in the four areas of mental work-related functioning are not inconsistent with a limitation to simple, unskilled work); *Mangual v. Comm'r of Soc. Sec.*, 600 F. Supp. 3d 313, 329 (S.D.N.Y. 2022) ("As a general matter, moderate limitations are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled, routine work."). And other than by asserting that another opinion was needed, *see* Docket Item 8-1 at 21, Cecil does not say why the ALJ's mental RFC determination was insufficient. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where, however, 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,' a medical source statement or formal medical opinion is not necessarily

---

and would not address his mental limitations "outside [] that brief period of time." *Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. Jun. 17, 2022).  In other words, even if an examination now showed that Cecil's mental impairments had worsened, that would not be a basis for rejecting the earlier evidence and opinions that applied to the time period at issue.

required." (brackets in original) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013))).

In sum, Cecil's argument that ALJ improperly assessed his mental impairments falls short.

### B.  Cecil's Physical RFC

Cecil also argues that the ALJ improperly cherry-picked evidence to support an RFC for less than a full range of sedentary work.  *See* Docket Item 8-1 at 24-29. Specifically, Cecil claims that the records of his treatment with Michael D. Calabrese, M.D., supported greater restrictions than those found by the ALJ.  *See id.* at 25.   But even if Dr. Calabrese's treatment records might support greater restrictions, the ALJ's RFC determination still was supported by substantial evidence.

To perform the full range of sedentary work, a claimant must be able to lift ten pounds occasionally.  *See* 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *3 (Jul. 2, 1996).  Cecil testified during the administrative hearing that he could "[p]robably lift about [fifteen] pounds without hurting [himself] too much."  Docket Item 6 at 62.  A consultative examiner, Trevor Litchmore, M.D., opined that Cecil had a marked limitation for "lifting and carrying heavy weights while standing or walking."  *Id.* at 1274-75.  And a state disability examiner, J. Koenig, M.D., opined that Cecil could lift twenty pounds occasionally and ten pounds frequently.  *Id.* at 90.  So there was more than ample support for the ALJ's conclusion that Cecil could perform the lifting requirements for less than the full range of sedentary work.  *See Stafford v. Astrue*, 581 F. Supp. 2d 456, 459 (W.D.N.Y. 2008) (significant limitations for heavy lifting consistent with claimant's ability to perform sedentary work).

To perform the full range of sedentary work, a claimant also must be able to sit for a total of six hours during an eight-hour workday.  *See* SSR 96-9p, 1996 WL 374185, at *3 (Jul. 2, 1996).  In this regard, Cecil testified that he could sit "from five to ten minutes without trying to adjust."  *Id.* at 62.  Dr. Koenig opined that Cecil could sit for about six hours in an eight-hour workday, *id.* at 90, and Dr. Litchmore concluded that Cecil had marked limitations only in "standing for prolonged periods of time" and "walking for prolonged periods of time," *id.* at 1274-75.  Taken together, that evidence likewise supports an RFC for less than the full range of sedentary work.  *DePriest v. Comm'r of Soc. Sec.*, 448 F. Supp. 3d 279, 286 (W.D.N.Y. 2020) (claimant's need to avoid prolonged standing and walking consistent with the ability to perform sedentary work).

Cecil goes to great lengths to provide a narrative overview of his treatment with Dr. Calabrese.  *See* Docket Item 8-1 at 25-27.  But Cecil fails to explain how that evidence would compel a reasonable factfinder to conclude that he was disabled or, in the alternative, what additional limitations the ALJ should have included in the RFC to better account for the information in those treatment records.  *Cf. Smith*, 740 F. App'x at 726 ("Here, Smith had a duty to prove a more restrictive RFC, and [he] failed to do so."); *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021) ("Plaintiff's argument consists of a laundry list of evidence in the record he argues the ALJ failed to weigh in making his determination and supports a finding of marked limitations.").  In fact, Cecil's argument implicitly asks this Court to do what neither this Court nor the ALJ could do—fashion an opinion about Cecil's limitations from the raw medical data.

The ALJ crafted an RFC based on the totality of the evidence, and Dr. Calabrese's treatment records alone do not suggest otherwise.  *See Schillo*, 31 F.4th at 78 ("[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.").  Cecil's arguments about the physical RFC therefore miss the mark as well.

## CONCLUSION

At their core, Cecil's arguments boil down to a disagreement with the ALJ's weighing of the evidence, but it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Cecil] is disabled."  *See Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d at 292; *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.").  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second guess it.

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Cecil's motion for judgment on the pleadings, Docket Item 8, is DENIED, and the

13

Commissioner's cross-motion for judgment on the pleadings, Docket Item 9, is

GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


      SO ORDERED.

Dated:      October 19, 2023
              Buffalo, New York


                                  */s/ Lawrence J. Vilardo*
                                  LAWRENCE J. VILARDO
                                  UNITED STATES DISTRICT JUDGE